IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIE L. RICHARDSON, #M50900,    )
                                  )
              Plaintiff,           )
                                  )
        vs.                        )        Case No. 3:24-cv-01623-MAB
                                  )
LATOYA HUGHES,                     )
RANDY SMITH,                       )
ADAMS,                             )
ELDRIDGE,                          )
BRUCE, and                         )
JOHN DOE (Correctional Officer,    )
        Internal Affairs),         )
                                  )
              Defendants.          )

## MEMORANDUM AND ORDER

BEATTY, Magistrate Judge:

Plaintiff Willie L. Richardson was an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Shawnee Correctional Center when he filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He has since been released from custody (Doc. 10). Plaintiff alleges that Defendants deprived him of his constitutional rights during his incarceration at Big Muddy River Correctional Center, where he was threatened with sexual assault and was subjected to excessive force (Doc. 1, pp. 5-11).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of

1

frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

A review of the Complaint reveals the following allegations: Plaintiff was working as a Core Porter at Big Muddy Correctional Center on September 23, 2022. When he entered the core to start his shift, he was confronted by Defendant C/O Randy Smith, who told him, "I'm going to fuck your mouth." (Doc. 1, p. 5). Plaintiff smelled a strong odor of alcohol coming from Smith. The next time Plaintiff entered the core, Smith struck him in his stomach (Doc. 1, p. 6). When Plaintiff left for lunch, Smith grabbed him by his right arm; Plaintiff pulled away and departed. Later, when Plaintiff returned from taking out trash, Smith tried to strike Plaintiff with a closed fist. Plaintiff ducked away, but Smith grabbed him by the neck and kneed him in the forehead. Defendant C/O's Adams and Eldridge were present and observed these events without intervening (Doc. 1, p. 7). As Plaintiff broke free and went back to his housing unit, he heard Eldridge ask Smith what he was doing.

At 2:00 p.m. that day, Plaintiff was taken to an interview with Internal Affairs ("IA") Lt. Anderton.[2] He believes Adams had reported the incident. Anderton sent Plaintiff to medical, where his injuries were treated and documented.

Plaintiff filed a grievance (No. 243-9-22) over the attack, which was deemed an

---

magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

[2] Plaintiff does not include Lt. Anderton as a defendant.

emergency (Doc. 1, p. 8; Doc. 1-1, pp. 1-4). However, the grievance was deemed "moot" until IA concluded its investigation. Plaintiff later submitted another grievance (No. 98-10-22), requesting the remedy of having no contact with Smith. This was also treated as an emergency but deemed moot pending the IA investigation's outcome (Doc. 1-1, pp. 5-9).

On May 17, 2023, on Plaintiff's way to lunch with his unit, he saw Smith near the building's exit. Smith said, "I'm going to get you for ratting me out nigger." (Doc. 1, p. 9). Smith reported this exchange to Defendant Bruce, who refused to do anything despite Plaintiff explaining that Smith was to have no contact with him. Bruce threatened to send Plaintiff to segregation for refusing housing if Plaintiff didn't go back to his lunch table (Doc. 1, p. 10). Plaintiff was able to speak with another officer (Lt. Maddison), who intervened and assured Plaintiff that Smith had been removed from Plaintiff's housing unit.

Because Smith was allowed to have contact with Plaintiff, the ARB had not answered his grievances for over six months, and there had been no resolution of the IA investigation conducted by the John Doe IA Officer Defendant, Plaintiff concluded that "senior staff," including Director Hughes, were unconcerned with his safety. He filed another grievance on May 26, 2023 (No. 201-5-23/BMR), requesting an immediate transfer to another prison for his safety (Doc. 1, p. 11; Doc. 1-1, pp. 10-12). This grievance was deemed an emergency and again found moot pending completion of the IA investigation. However, on June 8, 2023, Plaintiff was transferred to Shawnee Correctional Center.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief (Doc. 1, pp. 18-19).

DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

**Count 1:** Eighth Amendment claim against Defendant Smith for threatening to sexually assault Plaintiff on September 23, 2022.

**Count 2:** Eighth Amendment excessive force claim against Defendant Smith for striking Plaintiff and grabbing him by the neck on September 23, 2022.

**Count 3:** State law battery claim against Defendant Smith for striking Plaintiff and grabbing him by the neck on September 23, 2022.

**Count 4:** Eighth Amendment claims against Defendants Adams and Eldridge for failing to intervene when observing Defendant Smith's use of excessive force on Plaintiff on September 23, 2022.

**Count 5:** Claims against Defendant Smith under the First, Eighth, and Fourteenth Amendments for threatening Plaintiff and using a racial slur on May 17, 2023.

**Count 6:** Claims against Defendant Bruce under the First and Eighth Amendments for threatening Plaintiff and failing to protect him on May 17, 2023.

**Count 7:** Eighth Amendment claim against the Defendant John Doe IA Officer for failing to complete the investigation of the misconduct of Smith, Adams, Eldridge, and Bruce for over one year.

**Count 8:** Eighth Amendment claim against Defendant Hughes for failing to respond to Plaintiff's grievances and as supervisor of the other Defendants.

**Count 9:     State law claim for intentional infliction of emotional distress against all Defendants.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

## Count 1

Verbal harassment, even of a sexual or racial nature, generally does not constitute cruel and unusual punishment. *See Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). However, sexual harassment accompanied by physical conduct, and/or which places the inmate at risk of harm, may be actionable under the Eighth Amendment. *See Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019); *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015) (verbal sexual harassment accompanied by suggestive gestures, that arguably placed plaintiff at greater danger of assault by other prisoners and allegedly caused inmate psychological trauma to the extent of seeking mental health care, stated viable Eighth Amendment claim).

Here, Plaintiff describes a single declaration by Smith that he would perform a sexual act on Plaintiff. This took place in the "core" where Smith was working. Plaintiff does not indicate that other officers or fellow inmates heard Smith's comment or that he

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

suffered any mental distress, other than momentary shock, as a result of Smith's statement. Under the authority above, this incident does not rise to the level of an Eighth Amendment violation. Count 1 will therefore be dismissed without prejudice.

### Count 2

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018). A plaintiff must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Plaintiff's allegations that Smith struck him in the stomach, grabbed him by the neck, and kneed him in the forehead while Plaintiff was going about his porter duties are sufficient for Count 2 to proceed against Smith.

### Count 3

Plaintiff's allegations of excessive force in Count 2 also support an Illinois state law claim for battery. *See, e.g., Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 548 (7th Cir. 2018) (discussing assault and battery under Illinois law). Because Count 3 derives from the same facts as Plaintiff's federal excessive force claim, it will also proceed against Smith. 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

**Count 4**

The Seventh Circuit recognizes "failure to intervene" as a basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). To state such a claim, a plaintiff must sufficiently allege a defendant (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Plaintiff's allegations indicate that Defendants Adams and Eldridge were present while Smith grabbed and struck Plaintiff yet did nothing to stop Smith. At this stage, Count 4 will proceed against Adams and Eldridge.

**Count 5**

This claim is based on Smith's threat on May 17, 2023, to "get" Plaintiff for ratting him out and for calling Plaintiff a "nigger." Under the precedents discussed above in Count 1, this single racial slur, which took place nearly seven months after Smith allegedly battered Plaintiff, does not rise to the level of an Eighth Amendment violation. "The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt*, 224 F.3d at 612 (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987)). Such harassment does not deprive a prisoner of a protected liberty interest or equal protection of the laws; Plaintiff therefore also fails to state a Fourteenth Amendment claim. *See DeWalt*, 224 F.3d at 612.

Finally, Smith's statement does not state a First Amendment claim. Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See,*

*e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a prisoner must allege that he engaged in constitutionally protected activity and that a prison official took adverse action against him because he engaged in the protected activity. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Here, Plaintiff was undeterred by Smith's threat to "get" him and filed a grievance anyway. Plaintiff does not describe any adverse action against him that followed Smith's comment or Plaintiff's filing of the grievance. Absent an allegation of some adverse action/damage, Plaintiff fails to make out a claim for retaliation or for prior restraint. *See Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009).

For these reasons, Count 5 will be dismissed without prejudice.

### Count 6

Defendant Bruce allegedly responded to Plaintiff's report of Smith's racial slur and threat to "get" him by refusing to take action to ensure Smith had no contact with Plaintiff and threatening to discipline Plaintiff if he refused to return to the housing unit where he encountered Smith. First, the threat of discipline if Plaintiff failed to comply when it was time to return to his unit, does not amount to cruel or unusual punishment. Nor does Bruce's inaction amount to deliberate indifference to Plaintiff's safety, because Plaintiff was not placed in harm's way or harmed by coming into contact with Smith after Bruce refused to act.

Nor did Bruce's threat of discipline violate the First Amendment. The statement did not deter Plaintiff from reporting the incident to another officer, and Plaintiff suffered no adverse action resulting from Bruce's comment. Count 6 and Defendant Bruce will

therefore be dismissed from the action.

## Count 7

Plaintiff's claim against the John Doe IA Officer, who he believes was tasked with investigating the alleged misconduct of Smith, Adams, Eldridge, and Bruce, fails to state a viable constitutional claim. He claims the John Doe's inaction regarding the investigation "contributes to an environment that allows and encourages cruel and unusual punishment" in violation of the Eighth Amendment (Doc. 1, p. 15). This amorphous allegation does not sufficiently plead a claim for deliberate indifference. To meet the Eighth Amendment standard, a prisoner must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," amounting to a serious deprivation of basic human needs that created an excessive risk to health or safety, and that the defendant prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Additionally, an official's failure to investigate inmate grievances does not support a constitutional claim, because prison grievance procedures are not constitutionally mandated. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Count 7 and the John Doe IA Officer will be dismissed.

## Count 8

Plaintiff's claim against Defendant Hughes (IDOC Director) similarly asserts her failure to address his grievances "contributes to an environment that allows and encourages cruel and unusual punishment." (Doc. 1, p. 16). This claim fails for the reasons

9

explained above in Count 7. Moreover, Plaintiff cannot hold Hughes liable for any misconduct on the part of her subordinate officials on the theory of *respondeat superior*. There is no supervisory liability in § 1983 civil rights cases. "[T]o be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, Count 8 and Defendant Hughes will be dismissed.

### Count 9

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

As explained above, Counts 2 and 3 against Smith, and Count 4 against Adams and Eldridge, survive review under § 1915A. Plaintiff asserts that Smith's threat to sexually assault Plaintiff "shocked [him] to motionlessness" and caused him "severe psychological harm." Adams and Eldridge failed to stop Smith's physical attack. Plaintiff later suffered fear for his safety after encountering Smith again after being told they

10

would have no contact. Count 9 will be permitted to proceed against Smith, Adams, and Eldridge based on the factual allegations underlying Counts 2, 3, and 4.

### INJUNCTIVE RELIEF

Plaintiff's release from IDOC custody has rendered his claims for injunctive relief moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Big Muddy River Correctional Center under the conditions described in the Complaint, would it be proper for the Court to consider the injunctive relief he requests. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)).

### OFFICIAL CAPACITY CLAIMS

Plaintiff raises claims against each defendant in his or her individual and official capacities (Doc. 1, p. 4). However, claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual defendants are dismissed without prejudice.

### MOTION TO REQUEST COUNSEL (DOC. 4)

The Motion to Request (Doc. 4) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court

considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff states his wife wrote on his behalf to several lawyers without success, but he does not provide copies of any rejection letters (Doc. 4, pp. 6-8). Further, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. S*ee Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). If Plaintiff encounters difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he chooses to renew his request, he should submit at least three rejection letters from attorneys to demonstrate that he has made reasonable efforts to obtain counsel on his own. In addition, the Court may require updated proof of Plaintiff's indigency.

DISPOSITION

The Complaint states colorable claims in Counts 2 and 3 against Randy Smith, in Count 4 against Adams and Eldridge, and in Count 9 against Smith, Adams, and Eldridge. Counts 1, 5, 6, 7, and 8, and Defendants Hughes, Bruce, and John Doe, are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for Randy Smith, C/O Adams, and C/O Eldridge: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver

of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: December 13, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take 90 days or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.